UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUCLIDES BARTOLOME BUGLIOTTI
and MARIA CRISTINE DE BIASI;
and ROXANA INES ROJAS as
Executor of the Estate of Hugo
Miguel Lauret,

    Plaintiffs

  -against-

THE REPUBLIC OF ARGENTINA

    Defendant.

17 Civ. 9934 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

  Before the Court is the motion to dismiss, pursuant to

Federal Rules of Civil Procedure 12(b)(1), (2), and (5), filed

by Defendant the Republic of Argentina ("the Republic").[1]

Plaintiffs Euclides Bartolome Bugliotti, Maria Cristine De

Biasi, and Roxana Ines Rojas as Executor of the Estate of Hugo

Miguel Lauret, oppose the motion.[2]

  For the reasons stated below, the motion to dismiss is

GRANTED.

---

[1] (See Defendant's Notice of Motion to Dismiss Plaintiffs'
Complaint, dated July 10, 2020 [dkt. no. 31]; see also
Memorandum of Law in Support of Defendant's Motion to Dismiss
("Mot."), dated July 10, 2020 [dkt. no. 32]; Reply Memorandum of
Law in Support of Defendant's Motion to Dismiss ("Reply"), dated
Oct. 5, 2020 [dkt. no. 43].)
[2] (See Plaintiffs' Memorandum in Opposition to Defendant's Motion
to Dismiss ("Opp."), dated Aug. 24, 2020 [dkt. no. 39].)

I.   **Background**

The Court assumes familiarity with this dispute's general background, which the Court set out in its Order granting the Republic's first motion to dismiss, (see Order, dated Jan. 15, 2019 [dkt. no. 19]), and which the Court of Appeals further described, see Bugliotti v. Republic of Argentina, 952 F.3d 410, 411 (2d Cir. 2020).  The Court briefly recounts the facts here.

a. **Facts**

Like many cases before this Court, this lawsuit involves the Republic's 1994 bond issuance and its subsequent default on that debt.  Plaintiffs, who are owners of bonds issued by the Republic pursuant to the 1994 Fiscal Agency Agreement ("FAA"), enrolled their bonds in an Argentine program called the Tax Credit Certificate program ("Program"), just before Argentina's default in 2001.  (See Complaint ("Compl."), dated Dec. 20, 2017 [dkt. no. 1], ¶¶ 6-7, 12-13.)  This tax-credit program, which allowed individual bondholders to credit unpaid interest on their bonds to local tax liabilities, has given rise to the disputed issues in this case.  (Id. at ¶ 12.)

Pursuant to the Program, in November 2021, Plaintiffs deposited their bonds into trust with Caja de Valores.  (Id.)  In exchange, they received tax-credit certificates and custody certificates ("CCs"), which matched the bonds' outstanding principal.  (Id. ¶¶ 12, 15.)  It is not alleged that the Tax

2

Credit Certificate program or the instruments issued in conjunction with this program included any waiver of sovereign immunity by the Republic or any submission to this Court's jurisdiction.  Instead, Plaintiffs allege that the FAA contains a provision whereby the Republic waives its sovereign immunity, submits to this Court's jurisdiction, and appoints an agent for service of process.  (Id. ¶ 10.)

In December 2001, the Republic defaulted on its FAA bonds. (Id. ¶¶ 13-14.)  While Plaintiffs were able to redeem their tax-credit certificates as the interest payments came due, they have yet to receive payment for the principal due at maturity, despite the bonds' reaching (and passing) their maturity dates. (Id. ¶ 15.)  In 2012, Plaintiffs initiated an amparo proceeding in Argentine court seeking a declaration that Argentina's postponement of its payment obligations was unconstitutional. (Id. ¶ 16.)  That proceeding remains ongoing.  (Id.)

After their remaining bonds matured in 2017 and Argentina again failed to repay the principal due, Plaintiffs filed this lawsuit seeking damages in the amount of unpaid principal and post-maturity interest.[3]  (Id. ¶ 43(a).)

---

[3] Plaintiffs also sought injunctive relief based on a violation of the FAA's pari passu clause, (id. at ¶ 43(b)), which this Court denied and the Court of Appeals affirmed.  Bugliotti v. Republic of Argentina, 952 F.3d 410, 415 (2d Cir. 2020).

**b. <u>Procedural History</u>**

On January 15, 2019, this Court granted the Republic's motion to dismiss Plaintiffs' claims.  <u>Bugliotti v. Republic of Argentina</u>, No. 17 CIV 9934 (LAP), 2019 WL 586091, at *4 (S.D.N.Y. Jan. 15, 2019).  Reasoning that Plaintiffs' participation in the Tax Credit Certificate program had effected an exchange of their bonds for tax-credit certificates and CCs, this Court held that "Plaintiffs no longer have legal ownership" of the bonds under Argentine trust law.  <u>Id.</u> at *2.  Because Plaintiffs no longer owned the bonds, they could no longer avail themselves of Argentina's sovereign-immunity waiver and consents to service of process and personal jurisdiction.  <u>See id.</u> at *3.  Therefore, this Court found it lacked jurisdiction over Plaintiffs' action.  <u>Id.</u>

Alternatively, this Court held that dismissal was appropriate under the doctrine of international comity because of the pending <u>amparo</u> proceeding in Argentina and "the importance of the Tax Credit Program to the Republic['s]" sovereign interests.  <u>Id.</u>

Plaintiffs appealed, arguing that this Court's focus on "ownership" of the bonds was misplaced.  <u>Bugliotti v. Republic of Argentina</u>, 952 F.3d 410, 413 (2d Cir. 2020).  The Court of Appeals agreed and determined that the relevant "question is not whether Plaintiffs 'own' the bonds but whether they may sue to

enforce them." Id. at 411.  Finding that this Court is "better situated in these circumstances to implement Rule 44.1's flexible procedures for determining foreign law," the Court of Appeals remanded the case with instructions to determine whether Plaintiffs retain the right to sue on the bonds under Argentine law.  Id.

As to adjudicative international comity, the Court of Appeals reversed this Court's finding that the Republic's interests in its Tax Credit program were "categorically sufficient to trigger comity-based abstention."  Id. at 415.  However, the Court of Appeals left open the question on remand as to whether abstention might be appropriate on international comity grounds "based upon other considerations, or on a more developed record."  Id. at 415 n.4.

Following the Court of Appeals' remand, the Republic filed a renewed motion to dismiss Plaintiffs' claims for lack of standing, insufficient service of process, lack of subject matter jurisdiction, lack of personal jurisdiction, and reasons of international comity pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (5).  (See Mot. at 1.)  The Republic contends that this Court lacks jurisdiction because the plain text of Argentine trust law provides the trustee with an "exclusive" right to enforce the bonds.  (See id. at 10-11, 13-15; see also Declaration of Gabriel Bottini in Support of

Defendant's Motion ("Bottini Decl."), dated July 10, 2020 [dkt. no. 33], ¶ 10.)  Alternatively, the Republic justifies dismissal on international comity grounds, claiming that the amparo proceedings are parallel to this litigation and present "exceptional circumstances" warranting abstention. (See Mot. at 16-20.)

In response, Plaintiffs argue that this Court should deny the Republic's renewed motion because they are authorized to sue as trust beneficiaries in place of the trustee under Argentine trust and contract law, which allows trustees and beneficiaries to enter freely into alternative agreements concerning enforcement rights.  (See Opp. at 10-12.)  Plaintiffs also argue that the international comity issue is beyond the scope of remand and that exceptional circumstances do not justify abstention on such grounds because the amparo proceedings are not parallel to this litigation.  (Id. at 18-20.)  On reply, the Republic avers that Plaintiffs' arguments run contrary to both Argentine law and a plain reading of the Trust Agreement upon which they rely.  (See Reply at 2-6.)  As to the international comity issue, the Republic argues that the Court of Appeals "explicitly contemplated" that comity-based abstention might be appropriate on remand "based upon other considerations" or "a more developed record" and that foreign proceedings need not be

identical to be considered parallel for abstention purposes.
(Id. at 8-9.)

## II.   **Legal Standard**

### a. **Fed. R. Civ. P. 12(b)(1)**

The Court of Appeals has designated Rule 12(b)(1) as the
"proper procedural route" for a challenge to standing. All. For
Env't Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88
n.2 (2d Cir. 2006).  "When reviewing a Rule 12(b)(1) motion to
dismiss, a court 'must accept as true all material factual
allegations in the complaint, but [may] not [ ] draw inferences
from the complaint favorable to plaintiffs.'"  Waxman v. Cliffs
Nat. Res. Inc., 222 F. Supp. 3d 281, 286 (S.D.N.Y. 2016) (citing
J.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).
"In defending against a motion to dismiss under Rule 12(b)(1),
the non-moving party bears the burden of proving the court's
subject matter jurisdiction by a preponderance of the evidence."
Sloan v. Michel, No. 15 CIV. 6963 (LGS), 2016 WL 1312769, at *3
(S.D.N.Y. Apr. 4, 2016); see also Makarova v. United States, 201
F.3d 110, 113 (2d Cir. 2000); see also Davis v. Kosinksy, 217
F.Supp.3d at 706, 707 (S.D.N.Y. 2016).  Under Rule 12(b)(1), a
court "may refer to evidence outside the pleadings." Makarova,
201 F.3d at 113; see Davis, 217 F.Supp.3d at 708, 2016 WL
6581300, at *1.  A court "may not rely on conclusory or hearsay
statements contained in the affidavits," however, in considering

evidence outside the pleadings.  <u>Attica Cent. Sch.</u>, 386 F.3d at
110.

### b. <u>Fed. R. Civ. P. 12(b)(2)</u>

"A plaintiff bears the burden of demonstrating personal
jurisdiction over a person or entity against whom it seeks to
bring suit."  <u>Troma Entm't, Inc. v. Centennial Pictures Inc.</u>,
729 F.3d 215, 217 (2d Cir. 2013).  "In order to survive a motion
to dismiss for lack of personal jurisdiction, a plaintiff must
make a prima facie showing that jurisdiction exists."  <u>Eades v.
Kennedy, PC Law Offices</u>, 799 F.3d 161, 167-68 (2d Cir. 2015).
"Th[at] prima facie showing must include an averment of facts
that, if credited by the ultimate trier of fact, would suffice
to establish jurisdiction over the defendant."  <u>O'Neill v. Asat
Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001)</u>, 714 F.3d
659, 673 (2d Cir. 2013) (quotation marks omitted).

### c. <u>Fed. R. Civ. P. 12(b)(5)</u>

Rule 12(b)(5) provides for dismissal of a claim for
improper service of process.  Fed. R. Civ. P. 12(b)(5).  Under
Rule 12(b)(5), "the plaintiff bears the burden of proving [the]
adequacy" of service.  <u>Mende v. Milestone Tech., Inc.</u>, 269 F.
Supp. 2d 246, 251 (S.D.N.Y. 2003) (internal quotation marks and
citation omitted).  In evaluating whether service of process was
proper under a Rule 12(b)(5) motion to dismiss, the Court must
look to Rule 4 of the Federal Rules of Civil Procedure.  The

Court is required to dismiss an action if service was improper or incomplete "unless it appears that proper service may still be obtained." Garcia v. City of N.Y., No. 15 CIV 7470 (ER), 2017 WL 1169640, at *4 (S.D.N.Y. Mar. 28, 2017) (quoting Romandette v. Weetabix Co., 807 F.2d 309, 311 (2d Cir. 1986)).  In analyzing a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process, the Court is entitled to look outside the four corners of the complaint to determine whether it has jurisdiction. Garcia, 2017 WL 1169640, at *4.

### III.  Discussion

The Court first evaluates whether international comity compels dismissal before assessing whether Plaintiffs retain a right under Argentine law to bring a lawsuit to recover the bonds' unpaid principal.

#### a. Abstention

##### 1. Legal Standard

Under the doctrine of international comity, courts have "the inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction." Ole Media Mgmt, L.P. v. EMI Apr. Music, Inc. No. 12 CIV. 7249 (PAE), 2013 WL 2531277, at *2 (S.D.N.Y. June 10, 2013). However, because federal courts have a "virtually unflagging obligation to exercise [their] jurisdiction," "only the clearest of justifications will warrant dismissal."  Royal & Sun All.

Ins. Co. of Can. v. Century Int'l Arms, Inc., 466 F.3d 88, 93 (2d Cir. 2006) (citation omitted).  As the Court of Appeals instructs, "[t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification for the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction."  Id.  Such exceptional circumstances "must, of course, raise considerations which are not generally present as a result of parallel litigation, otherwise . . . a district court's unflagging obligation to exercise its jurisdiction would become merely a polite request."  Leopard Marine & Trading, Ltd. v. Easy St. Ltd., 896 F.3d 174, 190 (2d Cir. 2018) (quoting Royal & Sun, 466 F.3d at 93).

In Royal & Sun, the Court of Appeals provided the following list of nonexclusive factors for courts to consider when examining the "totality of the circumstances" in weighing abstention:

> [1] the similarity of the parties, [2] the similarity of the issues, [3] the order in which the actions were filed, [4] the adequacy of the alternate forum, [5] the potential prejudice to either party, [6] the convenience of the parties, [7] the connection between the litigation and the United States, and [8] the connection between the litigation and the foreign jurisdiction.

Royal & Sun, 466, F.3d at 94.

### 2. **Application**

The Republic argues that international comity precludes adjudication of the instant proceeding in New York in deference to the Argentine action.  Although there may be parallel litigation ongoing in Argentina, the Republic has failed to establish sufficiently exceptional circumstances to overcome the Court's heavy obligation to exercise jurisdiction, upon application of the Royal & Sun factors.

### i.    **Similarity of Parties and Issues**

It is not entirely clear to the Court whether the actions here and in Argentina are "parallel proceedings in which 'substantially the same parties are litigating substantially the same issues simultaneously in two fora.'"  C.D.S., Inc. v. Zetler, 198 F. Supp. 3d 323, 331 (S.D.N.Y. 2016) (quoting Tarazi v. Truehope Inc., 958 F. Supp. 2d 428, 433 (S.D.N.Y. 2013)).

While the parties to the two actions are clearly sufficiently similar, the Court has some doubt as to whether the issues are substantially similar.  Plaintiffs contend the actions are not parallel because the 2004 amparo proceedings involved different bonds, and the 2012 amparo proceedings did not concern CCs issued with respect to the 2017 bonds.  (See Opp. at 19-20.)  On the other hand, the Republic avers that these contentions are distractions from the fact that the 2012 amparo proceedings will resolve the question of Plaintiffs'

11

right to payment on the CCs, despite the involvement of different bonds.  (See Reply at 9-10.)

Even assuming that the issues are substantially similar to render the actions parallel, an analysis of the remaining factors confirms that exceptional circumstances do not exist to compel dismissal.

### ii.  **Order of Filing**

The order in which the actions were filed weighs in favor of abstention.  While abstention is favored if the foreign suit was filed first, "[t]his factor does not turn exclusively on the sequence in which the cases were filed." Accent Delight Int'l Ltd. v. Sotheby's, 394 F. Supp. 3d 399, 413 (S.D.N.Y. 2019). Courts must also consider "how much progress has been made in the two actions." Id.

Here, the parties have been litigating the CCs issue in the amparo actions for more than 15 years.  (See Mot. at 18; see also Declaration of Cristián Leopoldo Dellepiane ("Dellepiane Decl."), dated July 10, 2020 [dkt. no. 34], ¶ 5.)  Because the Argentine courts have developed the record significantly, judicial economy would be undermined by asking this Court to perform a duplicative analysis. See Mot. at 18; see also Accent Delight, 394 F. Supp. 3d at 413.  Despite these findings, the Court is hesitant to afford heavy weight to this factor because it is not clear how long it will take for the Argentine court to

issue a judgment.  See Schenker A.G. v. Société Air France, No. 14 CIV. 4711 (BMC) (PK), 2016 WL 1465353, at *3 (E.D.N.Y. Apr. 14, 2016) (finding no exceptional circumstance where the foreign litigation was not about to conclude and the parties could not estimate with any reasonable certainty how long it would take before the court issued a judgment).

### iii.  **Adequacy of the Alternative Forum**

The adequacy of the alternative forum weighs in favor of abstention.  "To establish that an alternative forum is adequate," the Defendant must show that it is "'amenable to service of process there, and [that] it permits litigation of the subject matter of the dispute.'"  Mex. Infrastructure Fin., LLC v. Corp. of Hamilton, No. 17 CIV 6424 (VSB), 2019 WL 1206690, at *5 (S.D.N.Y. Mar. 14, 2019) (quoting Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003)). Neither party disputes that full and adequate relief is available in the Argentine court.  The Trust Agreement itself contemplates disputes being adjudicated in Argentina.  (See Mot. at 19; see also Trust Agreement ("Tr. Agree."), dated Mar. 5, 2018 [dkt. no. 33-3], at §16 (Ex. 3).)  Moreover, Plaintiffs themselves elected to adjudicate their disputes in Argentina by filing the amparo proceedings.  (Mot. at 19.)

### iv.   **Potential Prejudice**

The potential prejudice to either party counsels against abstention.  Courts have found that "the 'burden of litigating simultaneously in two forums is not sufficient prejudice to weigh in favor of [a] stay.'"  C.D.S., 198 F. Supp. 3d at 333 (quoting Tarazi, 958 F. Supp. 2d at 438).  Additionally, little weight is given to the risk of inconsistent rulings because parties are free to present a res judicata argument if the foreign action becomes final first.  See NovaSparks SA v. EnyxFPGA, 344 F. Supp. 3d 666, 679 (S.D.N.Y. 2018). Accordingly, the Court is not persuaded by the Republic's arguments that it would suffer unfair prejudice from the burden of litigating simultaneously in Argentina and New York and from the potential double liability and inconsistent rulings.  (See Mot. at 19.)

### v.   **Convenience**

The convenience of the parties does not weigh in favor of abstention.  "Although it can be expensive and time consuming for parties to have to litigate similar conduct in different forums, th[is] Court does not find this factor gives rise to exceptional circumstances."  NovaSparks, 344 F. Supp. 3d at 679. Neither party disputes this factor.

14

### vi.  <u>Litigation's Connection to the United States and Argentina</u>

The litigation's connection to Argentina outweighs the interest of the New York forum, weighing in favor of abstention. It is undisputed that Argentina has a uniquely strong interest in this litigation, which involves a complex "Argentine tax program governed by Argentine law between Argentine parties." (Mot. at 20.)  A significant connection to the foreign forum like the one present here "is one of the 'exceptional circumstances' that must exist to 'outweigh the district court's general obligation to exercise its jurisdiction.'" <u>C.D.S.</u>, 198 F. Supp. 3d at 335 (quoting <u>Tarazi</u>, 958 F. Supp. 2d at 436).

### vii.  <u>Balance of Factors</u>

Evaluating these factors through a "careful balancing" rather than a "mechanical checklist," the Court is not persuaded that exceptional circumstances exist to warrant dismissal. <u>Royal & Sun</u>, 466 F.3d at 94.  The Court of Appeals has made clear that "[t]he general rule is that 'concurrent proceedings' regarding the same question are 'tolerat[ed].'" <u>Leopard Marine & Trading</u>, 896 F.3d at 191 (quoting <u>China Trade & Dev. Corp. v. M.V. Choong Yong</u>, 837 F.2d 33, 36 (2d Cir. 1987)).  To date, the Court of Appeals has recognized only one context where exceptional circumstances are generally present: foreign

bankruptcy proceedings.[4]  The sovereign interests in a breach of contract action, like the one currently before the Court, are inferior to those present in bankruptcy proceedings and are, accordingly, less deserving of deference.  In light of the high hurdles to abstention, the Court will not exercise its discretion to dismiss this action on the basis of international comity and will instead assess this case on the merits.

b. **Argument on the Merits**

Because international comity concerns do not require abstention, the Court turns to the parties' substantive dispute.

1. **Federal Rule of Civil Procedure 44.1**

In determining questions of foreign law, Federal Rule of Civil Procedure 44.1 provides that "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1.  However, the rule "does not require a court to undertake its own analysis to determine the

---

[4] Foreign bankruptcy issues generally require dismissal because "[a] foreign nation's interest in the equitable and orderly distribution of a debtor's property is an interest deserving of particular respect and deference."  Royal & Sun, 466 F.3d at 93 (internal quotation marks omitted).  In contrast, the Court of Appeals has determined that parallel proceedings concerning the same in personam claim "should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other."  Id. at 92 (citing China Trade, 837 F.2d at 36).

content of foreign law." SHLD, LLC v. Hall, No. 15 CIV. 6225 (LLS), 2017 WL 1428864, at *4 (S.D.N.Y. Apr. 20, 2017) (internal quotation marks omitted).  The Court of Appeals has observed that Rule 44.1 "has two purposes: (1) to make a court's determination of foreign law a matter of law rather than fact, and (2) to relax the evidentiary standard and to create a uniform procedure for interpreting foreign law." In re Vitamin C Antitrust Litig., 837 F.3d 175, 187 (2d Cir. 2016).

### 2. **Rule 44.1 Analysis**

Pursuant to Rule 44.1, the parties provided testimony from Argentine law experts on the question of whether Plaintiffs are entitled to bring suit to enforce the bonds.  Plaintiffs' experts are Messrs. Mario A. Carregal and Roberto E. Silva, Jr., senior trust law practitioners at the largest law firm in Argentina, who speak on the subject as professors and lecturers. (See Joint Declaration of Mario A. Carregal & Roberto E. Silva, Jr. in Support of Plaintiffs' Opposition to Defendant's Motion ("Carregal-Silva Decl."), dated Aug. 24, 2020 [dkt. no. 38], ¶¶ 2-13.)  The Republic has retained Mr. Gabriel Bottini, an experienced Argentine lawyer in both the public and private sectors who is currently a partner at a Spanish law firm based in Madrid.  (See Bottini Decl. ¶¶ 1-4.)

The parties' experts agree that the operative provision of Argentine law in this case is Article 18 of Law 24,441, which

17

provides that "[t]he trustee has standing to exercise all actions necessary to defend the trust assets, both against third parties and against the beneficiary."[5]   (See Bottini Decl. ¶ 15; see also Carregal-Silva Decl. ¶¶ 38-42.)   The experts also agree that under Article 18, the trustee is the party who generally takes actions enforcing the trust assets.   (See Reply Declaration of Gabriel Bottini ("Bottini Reply Decl."), dated Oct. 5, 2020 [dkt. no. 44], ¶ 26; see also Carregal-Silva Decl. ¶ 38.)   The parties dispute (1) whether Argentine public law provides the trustee with an exclusive right to enforce the bonds; (2) whether an alternative agreement delegated to Plaintiffs the ability to bring suit; and (3) whether reaggregation of the bonds is necessary in order for the Plaintiffs to bring suit.   After examining the experts' declarations, the Court concludes that Argentine law does not provide Plaintiffs with a right to bring this lawsuit to enforce the bond obligations.

---

[5] As the experts point out, even though new provisions on trusts entered into force in August 2015, Law 24,441 still applies because "it is the governing law according to the Trust Agreement and was the applicable trust law in place at the time the Trust Agreement was entered into in 2001."   Bottini Decl. ¶ 9.   See also Carregal-Silva Decl. ¶ 38.   Even if the new provisions controlled, "the answer to the Standing Question is the same under either regime."   Bottini Decl. ¶ 4.

### i.   Argentine Law Provides the Trustee with the Exclusive Right to Bring Suit

Article 18 of Law 24,441 unambiguously provides as follows: "The trustee has standing to exercise all actions necessary to defend the trust assets, both against third parties and against the beneficiary.  The judge may authorize the trustor or the beneficiary to exercise actions instead of the trustee, when the latter fails to do so without sufficient cause."  (Law No. 24,441, dated July 10, 2020 [dkt. no. 33-4], Art. 18 (Ex. 4).)

Although Plaintiffs' experts correctly observe that Article 18 does not state specifically that "only" the trustee may sue, (Carregal-Silva Decl. ¶ B; Opp. at 2), the Court finds the Republic's submission on the interpretation of Argentine law on this point more persuasive.

Of particular importance is Article 18's second sentence: "The judge may authorize the trustor or the beneficiary to exercise actions instead of the trustee, when the latter fails to do so without sufficient cause."  (Law No. 24,441, dated July 10, 2020 [dkt. no. 33-4], Art. 18 (Ex. 4).)  If Plaintiffs were correct and the trustee's standing was non-exclusive, "there would be no need to provide for a process for another party to bring suit."  (Reply at 2.)  Such a reading would violate the familiar statutory interpretation maxim in the United States, that is also a fundamental principle of Argentine law, "that

19

courts should avoid rendering statutory language superfluous."
(Bottini Reply Decl. ¶ 28 n.50 ("This principle of statutory
interpretation has been affirmed by the Argentine Supreme Court
in many cases") (citing Corte Suprema de Justicia de la Nación,
"Bolaño, Miguel Angel c/ Benito Roggio e Hijos S.A. - Ormas S.A.
- Joint Venture - Hidra Project," May 16, 1995 (Ex. 45)).)

The Court also declines to adopt Messrs. Carregal and
Silva's view that Article 18's exception "does not come into
play where there is no dispute or disagreement that the other
party will exercise such action."  (Carregal-Silva Decl. ¶ 41.)
Citing no case law or even a secondary source, Plaintiffs'
experts fail to provide any support for this proposition.  (See
id.; see also Bottini Reply Decl. ¶¶ 37-38.)  Plaintiffs
similarly fail to cite any Argentine statute, case law, or
treatise for their contention that "the parties establishing the
trust can[] make further agreements about their respective roles
in appropriate circumstances."  (Carregal-Silva Decl. ¶ 24.)  On
the contrary, Mr. Bottini persuasively explains how such an
agreement "would be inconsistent with the public law provisions
underpinning the Trust Agreement," which cannot be "readily
alter[ed] or modif[ied]" by subsequent private contracts.
(Bottini Reply Decl. ¶¶ 33, 20.)  Accordingly, the Court finds
Plaintiffs' unsupported contentions inconsistent with Article

18's statutory structure and therefore adopts the Republic's
view of the law.

### ii. The Caja Certification Did Not Confer a Right to Bring Suit

Even if Argentine law permitted Plaintiffs to enter into an
alternative agreement with Caja concerning the bonds'
enforcement, the Caja Certification did not delegate to
Plaintiffs the ability to bring suit.

First, Plaintiffs' experts point to Clause 6 of the Trust
Agreement as reason why the arrangement was effective under
Argentine law.  (Carregal-Silva Decl. ¶ 23.)  However, Clause 6
simply states that "the Trustee is not obliged to initiate any
court proceedings."  (Tr. Agree. § 6.)  It in no way suggests
that the Plaintiffs retain the right to enforce the bonds, which
become "unavailable to their holder" once tendered to the trust.
(See Tr. Agree. § 2; see also Bottini Reply Decl. ¶¶ 21, 33.)
In fact, no provision in the Trust Agreement delegates this
right to the Plaintiffs.

Next, Plaintiffs' experts rely on Paragraph 5 of the Caja
Certification.  (Carregal-Silva Decl. ¶ 27.)  That language,
however, only states that "the Trustee is not responsible for
the pursuit of legal action . . . and accordingly looks to
Bugliotti to take such action."  (Caja Certification, dated Nov.
22, 2017 [dkt. no. 38-2], ¶ 5 (Ex. 2).)  It lacks any indication

that the Plaintiffs and trustee intended to modify the terms of the Trust Agreement.  (Bottini Reply Decl. ¶ 31.)  The Court finds this unsurprising because, "as its name suggests, the Certification was merely intended to certify the trustee's position at that time . . . not confer on plaintiffs, or relinquish, any rights with respect to the trust assets." (Reply at 5 (citing Caja Decl. ¶ 17).)

Even if the Court were to accept Plaintiffs' contention that the Caja Certification constituted an alternative agreement conferring on them the ability to bring suit, the 2018 Caja Declaration would have revoked any such delegation.[6]  Thus, Plaintiffs remain unable to enforce the bonds.

### iii.   Reaggregation is Needed Before Bringing Suit on the Bonds

Lastly, the Court considers whether Argentine law requires the bonds to be reassembled before being enforced.  Citing two Argentine Supreme Court cases, Mr. Bottini advances the argument that Plaintiffs must return the tax-credit certificates and CCs to reassemble the bonds so that they can bring suit.  (Bottini Decl. ¶¶ 25-26.)  Plaintiffs' experts attempt to distinguish the

---

[6] "With respect to Paragraph 5 of the Certification . . . Caja was only stating that Caja itself would not exercise any rights to initiate court proceedings on behalf of plaintiffs (or any participants), consistent with the terms of the Tax Credit Program and the Trust Agreements."  (Declaration of Alejandro Santiago Berney (Caja De Valores, S.A.) ("Caja Decl."), dated May 16, 2018 [dkt. no. 46], ¶ 17.)

two cases as involving bondholders who wished to participate in Argentina's debt exchanges rather than bondholders bringing suit to enforce their rights. (Carregal-Silva Decl. ¶ 59.) However, Plaintiffs cite to no authority in their attempt to oppose the precedent indicating that bondholders must reassemble their bonds before exercising any rights related to their bonds. (See id. ¶¶ 56-60.) The Court concludes that Argentine law requires Plaintiffs to return the tax-credit certificates and CCs to reassemble the bonds to bring suit on the bonds.

The Court acknowledges that it may be cumbersome for Plaintiffs to return their CCs and the economic value of the tax-credit certificates and terminate the trust. But Plaintiffs are not left without additional recourse. As discussed above, Article 18 also provides as an alternative remedy—obtaining authorization from the judge to exercise an action instead of the trustee. (See Law No. 24,441, Art. 18.)

## IV.  **Conclusion**

Because Plaintiffs lack standing to bring suit to enforce the 1994 FAA Bonds under the terms of the Tax Credit Program and Trust Agreement under Argentine trust law as set forth above, Plaintiffs' complaint must be dismissed. Moreover, Plaintiffs may not invoke the 1994 FAA Bonds' service of process and jurisdictional provisions under the FSIA.

Accordingly, the Republic's renewed motion to dismiss (dkt. no. 31) is <u>GRANTED</u>.  The Clerk of the Court shall mark the action closed and all pending motions denied as moot.

**SO ORDERED.**

Dated:     New York, New York
           March 31, 2021

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge